# EXHIBIT 4

EXECUTED

THIS AGREEMENT is made this 24th day of May 2010

**BETWEEN:**

(1) **UNIVERSAL INTERNATIONAL MUSIC BV** of Gerrit van der Venlaan, 3743 DM Baarn, The Netherlands ("Universal").

(2) **INTERSCOPE RECORDS** of 2220 Colorado Avenue, Santa Monica, California 90404, a Californian general partnership ("Interscope").

(3) **ENRIQUE IGLESIAS** c/o Ziffren Brittenham Branca Fisher Gilbert Lurie and Stiffelman LLP of 1801 Century Park West, Los Angeles, California 90067 ("Artist").

**WHEREAS:-**

The parties are parties to certain existing agreements and wish to vary and/or amend and/or extend the same on the terms and conditions herein set out.

**NOW IT IS AGREED as follows:-**

1. Reference is made to the following agreements:-

    1.1 between Universal and Artist dated as of 20th May 1999 as the same has been varied and amended ("the Universal Agreement");

    1.2 between Interscope and Artist dated as of 20th May 1999 as the same has been varied and amended ("the Interscope Agreement");

    1.3 between Universal Music Latino a division of UMG Recordings Inc., ("Latino") and the Artist d/b/a EI Music dated 29th January 2002 in respect of the Fonovisa catalogue as the same has been varied and amended ("the Fonovisa Agreement").

2. It is acknowledged that:-

    2.1 the Artist has recorded and Delivered to Interscope under the Interscope Agreement four (4) MRC Albums in the English language namely:-

    - "Enrique"
    - "Escape"
    - "7"
    - "Insomniac"

    and one Greatest Hits Album entitled "Greatest Hits" ("the Existing Greatest Hits Album");

    2.2 the Artist has recorded and Delivered to Universal under the Universal Agreement one (1) MRC Album in the Spanish language namely "Quizas"

and remains obliged to record and Deliver one (1) more MRC Album (in the Spanish language) thereunder ("the Remaining MRC Album");

2.3 Latino has the right to release a further "Best Of" "Greatest Hits" Album under the Fonovisa Agreement (namely the Definitive Spanish Greatest Hits Album (as defined in the Fonovisa Agreement) including the New Definitive Spanish Greatest Hits Album Recordings (as defined in the Fonovisa Agreement) to be recorded and delivered by the Artist.

3.1 The Artist has fulfilled the Recording Commitment under the Interscope Agreement and accordingly Interscope and the Artist hereby mutually agree:-

3.1.1 that the Term of the Interscope Agreement (as defined therein) shall be terminated with effect from the date hereof SAVE AND PROVIDED THAT the re-recording restriction under clause 12(b) of the Interscope Agreement shall be varied and extended so that in sub-clause (2) (ii) thereof the date of two (2) years referred to therein shall run from the date of expiration or termination of the Universal Agreement as extended hereby;

3.1.2 Interscope hereby releases the Artist from the exclusivity obligations specified in clause 1A of the Interscope Agreement relating to the Post Term Exclusivity Period (as defined therein).

3.2 The Artist shall no longer be required to record and deliver the New Definitive Spanish Greatest Hits Album Recordings under the Fonovisa Agreement and Latino shall have no right to release the Definitive Spanish Greatest Hits Album or any other new "Greatest Hits" or "Best Of" album without the Artist's prior written consent provided that this shall be without prejudice to and not restrict any other right of Latino to couple or re-couple Recordings under the Fonovisa Agreement.

4. Universal and the Artist agree to vary and extend the Universal Agreement with effect from the date hereof on the following terms:-

4.1 Clause 1A of the Universal Agreement shall be modified so that the Term (as defined therein) shall be extended to end on Delivery of the third MRC Album (in lieu of the second MRC Album) and all references to the "second MRC Album" in clause 1A shall be deemed to be "third MRC Album".

4.2 Clause 2(a) of the Universal Agreement shall be modified so that Universal shall fund and Artist commit to Deliver three (3) MRC Albums. Artist has previously Delivered one (1) MRC Album ("Quizas") and so as a result of this modification remains obliged to Deliver two (2) further MRC Albums (inclusive of the Remaining MRC Album). The requirement that each Album shall be recorded entirely in Spanish shall be deleted and replaced by a requirement that such Albums contain Spanish and/or English language recordings in accordance with clause 5 below.

4.3.1 In addition to the GH Sides required to be Delivered pursuant to clause 2(a) of the Universal Agreement (which it is acknowledged have previously been Delivered) Universal shall have the right to request (at any time during or up to 12 months after

the Term) that the Artist shall record two (2) additional newly recorded Sides (of previously unreleased material) ("New GH Sides") to be included on a new Greatest Hits or Best Of Album ("New GH Album") which Artist confirms may be released by Universal.

4.3.2    Any request by Company for the New GH Sides shall be made in writing. The Artist shall notify Universal in writing within 30 days of such request whether Artist is prepared to record and Deliver the New GH Sides. In the event that the Artist agrees to record and Deliver the New GH Sides (and does record and Deliver such New GH Sides) then Universal agrees to pay to the Artist an advance (inclusive of Recording Costs for the New GH Sides) in the sum of ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉ less the amount of the Artist's combined unrecouped balance under the combined Interscope Agreement and UIM Agreement (as amended hereby) at the date of Delivery of the New GH Sides subject always to a minimum advance of ▉▉ ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ Such advance to be paid on Delivery of the New GH Sides which the Artist agrees to Deliver within 150 days (or such longer period as shall be mutually agreed) of the Artist confirming that the Artist agrees to record and Deliver the same.

4.3.3    In the event that the Artist shall (i) decline to record the New GH Sides or (ii) shall fail to confirm his agreement to record and Deliver the same within the 30 day time period in clause 4.3.2 above or (iii) fail to Deliver the New GH Sides to Universal within the 150 day time period in clause 4.3.2 above then Universal shall nevertheless remain entitled to release a New GH Album by re-sequencing and re-constituting and re-packaging the Existing Greatest Hits Album with new Artwork and by including Sides from the second MRC Album and the third MRC Album (whether by substitution of or in addition to the tracks on the Existing Greatest Hits Album). In the event additional Sides are included for the purpose of the New GH Album so as to give a greater number of songs than on the Existing GH Album then the mechanical royalty "cap" in clause 5 of the Universal Agreement shall be increased by the number of additional songs but solely for such re-constituted New GH Album. No advance shall be payable for the New GH Album without the New GH Sides.

4.3.4    Artist and Universal shall mutually determine the selections to be included on the New GH Album provided to the extent the parties cannot agree on the selections each of Artist and Universal shall have the right to select one half of the selections of Master Recordings to be included thereon and further provided Artist and Universal hereby approve the inclusion of any Master Recording that attained a top 40 chart position on the chart then reporting "top 100" hits in the United States or attained a top 15 chart position in a similar chart for Spanish speaking recordings in the United States or respective Spanish Speaking territories.

4.3.5    Save for the New GH Album Universal shall have no right to release any other new "Greatest Hits" or "Best Of" embodying wholly Recordings by Artist without Artist's prior written consent provided that this shall be without prejudice to and not restrict any other right of Universal to couple or re-couple Recordings under the Agreement.

4.4      The delivery schedule in clause 2(d) shall be modified so that it is the intention that the second MRC Album (i.e. the first MRC Album to be Delivered under this

modified arrangement) shall be Delivered on or about 30th June 2010 (provided Artist's failure to Deliver the same at such time shall not be a breach hereof). The third MRC Album (i.e. the second MRC Album to be Delivered under this modified arrangement) shall be Delivered not earlier than twelve (12) months and not later than thirty (30) months after the date of Delivery of the immediately preceding MRC Album Delivered hereunder. The last sentence of clause 2(d) shall continue to apply.

4.5   Clause 3(a)(2) of the Universal Agreement (as amended by the March 25 2003 amendment letter between Universal and Artist) shall be deleted and replaced by the following:-

"(2)   the second MRC Album – ▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇ payable as to ▇▇▇▇▇▇▇▇▇▇ on the date of full execution hereof and ▇▇▇▇▇▇▇▇▇▇ upon Delivery (after deduction of Recording Costs incurred by Universal on behalf of Artist) to Universal of the second MRC Album;

(3)   the third MRC Album – an advance equal to ▇▇▇▇▇▇ of the worldwide royalty earnings (including royalty earnings in respect of digital downloading) accounted to the Artist for the second MRC Album subject to the following minimum and maximum advance payments.

Minimum – ▇▇▇▇▇▇▇▇▇▇
save that if at the Calculation Date the advance for the second MRC Album specified in sub-clause (2) above is unrecouped then such advance shall be reduced by such unrecouped balance subject to an absolute minimum of ▇▇▇▇▇▇▇▇▇▇▇▇▇▇.

Maximum – ▇▇▇▇▇▇▇▇▇▇

Such advance shall be calculated on the date expiring 18 months after the release of the second MRC Album ("the Calculation Date") and payable as to ▇▇▇ of the minimum sum on bona fide commencement of recording of the third MRC Album and ▇▇▇ of the minimum sum on the date of Delivery (after deduction of Recording Costs incurred by Universal on behalf of Artist) of the third MRC Album and the balance (if any) on whichever is the later of the Calculation Date or the date of Delivery of the third MRC Album."

4.6   Clause 3(d) of the Universal Agreement shall be deleted in its entirety.

4.7   Advances hereunder are fully inclusive of Recording Costs. Clause 3(f) of the Universal Agreement shall be deleted but Universal agrees to administer and pay such Recording Costs on behalf of Artist in accordance with a mutually pre-approved budget and to deduct such Recording Costs from the balance of the advance due to the Artist for the Album concerned. Universal shall "PO" the respective Recording Costs in accordance with such pre-approved budget (i.e. issue purchase orders to the respective studios in accordance with the pre-approved budget and thereafter issue payment in accordance therewith). Regardless of Artist's recoupment status Universal will accept letters of direction for payment in accordance with Universal's

then current standard form. Recording Costs shall not be recoupable from mechanical royalties. To the extent that Artist wishes to include any featured performances by third party artists in Master Recordings hereunder or wishes to include any third party "samples" in Master Recordings then the use of such third party performances and samples ("Third Party Material") shall be conditional upon all necessary consents and clearances being obtained. The Artist shall deliver to Universal all necessary information in respect of such Third Party Material to enable Universal to apply (on Artist's behalf) for all consents and clearances required and all clearance and other payments in respect of such Third Party Material (and Universal's endeavours in attempting to clear the same) shall represent additional Recording Costs hereunder which shall be fully deductible from advances (save that royalties payable to third parties shall be deductible from Artist's royalties but not from advances) provided that in the event that clearance cannot promptly be obtained for any reason (including without limitation by reason of the requested terms of clearance being too onerous) then the Artist shall at Universal's request re-record the relevant Master Recording or part thereof to remove the applicable Third Party Material. Universal shall be entitled to retain a reasonable "reserve" (as determined by Universal in its best business judgement) from advances hereunder to pay for such consents and clearances which shall be retained until such time as all necessary consents and clearances have been obtained. For the avoidance of doubt no Album shall be Delivered until all necessary consents and clearances have been obtained.

4.8   Universal hereby agrees that with respect to new Albums first released after the date hereof then to the extent that there are two different language versions of the same Controlled Composition (one in English and one in Spanish) on any Album then for the purpose of payment and calculation of mechanical royalties each version shall be treated as a separate Composition subject always to the mechanical royalty "cap" on Albums in clause 5 of the Universal Agreement.

4.9.1   The reference to "Interscope" in the second line of clause 6 and the first sentence and penultimate sentence of clause 7 and the second sentence of clause 10 and the first sentence and third sentence and sixth sentence of clause 11 of the Universal Agreement shall be deleted and replaced with "Universal".

4.9.2   The parties hereby agree that the fifth sentence of clause 11, namely the following provision:

"Universal agrees to hire an independent public relations person (on a non-recoupable basis) in conjunction with the release of each album hereunder in the United States which hire and budget shall be mutually agreed"

shall be preserved and shall continue to apply but only for a period of twelve (12) months from the date of execution hereof PROVIDED THAT if such persons services are not required for the full 12 months then the unused months (rounded down to the nearest month) shall be carried forward for use in connection with the third MRC Album. Thereafter the parties shall review the situation.

5.1   Notwithstanding anything to the contrary contained in the Interscope Agreement and/or the Universal Agreement it is understood and agreed that the Universal

Agreement shall with effect from the date hereof cover and govern the Artist's exclusive recording services and performances in both the English and Spanish (and any other) language.

5.2  Recordings for the second MRC Album and third MRC Album (and (to the extent recorded) the New GH Sides) shall be in the English and/or Spanish language with some in both languages. Both Universal and the Artist shall mutually agree in good faith the Compositions to be recorded and the language in which they are to be sung. It is acknowledged that Recordings for the second MRC Album are primarily in English.

6.1  The parties hereby confirm and agree that the Universal Agreement (as amended hereby) and the Interscope Agreement shall be cross collateralised so that advances and other recoupable payments paid under each and every such agreement can be recouped from royalties payable under each and every such agreement.

6.2  The first two (2) sentences of clause 18(c) of the Universal Agreement shall be preserved but with effect from the date hereof the remainder of the clause referring to the Baseline Schedule shall be deemed deleted.

7.  Universal hereby confirms that:-

   7.1  Artist retains ownership of the domain name and URL EnriqueIglesias.com. To the extent that the Company acquires any database of information relating to the Artist then subject to all applicable data protection legislation the Company allow the Artist to have copies of such database (not more than twice per annum);

   7.2  with respect to Net Sales taking place after 1st July 2010 of so-called digital downloading of Records under the Universal Agreement such sales shall be at the full otherwise applicable royalty rate for Albums with no Container Charges but otherwise calculated in the same manner and subject to same reductions and deductions as set out in the Universal Agreement (as amended hereby);

   7.3  in the event that the Artist requests that any Covered Video be broadcast or transmitted via a third party website (including the Artist's pages on social networking websites such as MySpace and Facebook) then provided that:-

      7.3.1  such broadcast or transmission is solely for promotional purposes; and

      7.3.2  the third party website agreeing to take the relevant Universal platform through which Universal will deliver the repertoire;

   then Universal agree to make such Covered Video available for broadcast or transmission on such terms. Universal also agree (at Artist's request) to make Recordings available for broadcast and transmission via Artist's official designated websites (i.e. those websites owned and controlled by Artist) subject to the same terms and conditions as aforesaid.

8. Clause 19 of the Universal Agreement shall be deleted and the parties confirm and agree that the Universal Agreement (as amended hereby) shall not be subject to California law or jurisdiction or to the governing law of any other specific jurisdiction.

9.1 Reference is made to clause 11 of the Universal Agreement. The Artist agrees that Universal's obligation to pay for the cost of air travel in respect of the Artist's promotional activities in the last sentence of clause 11 shall be an obligation to pay for air travel for the Artist plus one other person at first class standard and to the extent that the Artist wishes to make his own arrangements for travel then Universal shall pay to the Artist a sum equivalent to the cost of first class tickets for 2 persons to and from the destination concerned.

9.2.1 The Artist and Universal shall subject to sub-clause 9.2.2 below mutually agree the licensee company in the United States of America ("the US Licensee") through which Recordings recorded under the extended Universal Agreement shall be released in the United States of America. Universal shall be under no obligation whatsoever to agree to a release in United States of America through a company which is not a company within the Universal Music Group of Companies.

9.2.2 the parties hereby confirm mutual agreement with Universal Republic as US Licensee.

10.1 Universal and the Artist hereby agree the following further terms between them.

10.2 For the purposes of this clause the following terms shall have the following meanings:-

    10.2.1 "the Property" shall mean the name(s) and professional name(s) of the Artist and all characters, symbols, logos, designs, likenesses, representations of the Artist and the fame and reputation and all intellectual property rights in and to the Artist;

    10.2.2 "Brand Rights" shall mean all rights of sponsorship advertising and endorsement in and to the Property but for the avoidance of doubt shall exclude all songwriting and music publishing rights and services of the Artist.

10.3 The Artist hereby appoints Universal during the Term as his non-exclusive representative to source and procure opportunities in respect of the exploitation of Brand Rights.

10.4 Prior to commencing any substantial negotiations (i.e. negotiation of material terms) with a third party for the exploitation of any of the Brand Rights Universal shall notify the Artist of the identity of the third party and the nature of the proposal in question and shall fully and meaningfully consult with the Artist in relation to the proposed activity or grant of rights in question and to obtain the Artist's approval before commencing such negotiations and the Artist shall in any event have approval over the final form of agreement. In the event that the Artist fails to give his approval to

commencing any negotiations for any particular agreement for exploitation of Brand Rights sourced by the Company the Artist shall be prohibited from undertaking negotiations directly on his own behalf to the exclusion of the Company and from entering into an agreement (or any variation or replacement thereof) in respect of the proposal and with the third party put forward by Universal for a period of 12 months thereafter and hereby warrants and represents that Artist will not do so.

10.5   The Artist shall enter into all agreements for the exploitation of Brand Rights SAVE THAT Universal shall be entitled to be a party to any such agreement for the purpose of receiving direct accounting of its Commission.

10.6   Universal shall be entitled to receive (for its own benefit) ▮▮▮▮▮▮▮ of all monies payable to or on behalf of Artist for Artist's benefit (excluding reimbursement of expenses and bona fide payments to third parties (for example payments for master or publishing licenses but excluding management commission)) under any agreement for the exploitation of Brand Rights that has been sourced or procured by Universal which is entered into during the Term or substantially negotiated during the Term ("Commission") and whether such monies are payable during or after the Term.

10.7   To the extent that Universal does not receive direct accounting of the Commission the Artist agrees to account to Universal within 30 days of receipt of any monies in respect of which Universal is entitled to Commission thereon together with a statement of account setting out the calculation of sums due to Universal.

10.8   Universal shall have the same audit and inspection rights in relation to the Artist's books and records as Artist's audit and inspection rights pursuant to clauses 3.03 and 3.04 of Exhibit A of the Universal Agreement mutatis mutandis.

10.9   Artist shall act in good faith in relation to this clause and shall consult with the Universal regarding the exploitation of Brand Rights and shall not do or omit to do any act or thing the principal purpose of which is to reduce payments to Universal hereunder.

11. Words and phrases used hereunder shall, to the extent not separately defined herein (or attributed to a separate agreement) bear the meanings attributed thereto in the Universal Agreement.

12. Save as varied and modified herein the Universal Agreement shall remain in full force and effect.

IN WITNESS WHEREOF the hands of the parties the day and year first above written.

SIGNED by: _____
UNIVERSAL INTERNATIONAL MUSIC BV

SIGNED by: _____
INTERSCOPE RECORDS

SIGNED by: _____
ENRIQUE IGLESIAS